**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, P. J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**January 28, 2025**

# In the Court of Appeals of Georgia

A24A1368. DAVIS v. RX WATERPROOFING AND FOUNDATION REPAIR, LLC.

McFADDEN, Presiding Judge.

Jonathan Davis, who had been hired as a contractor to repair a house, retained RX Waterproofing and Foundation Repair, LLC as a subcontractor to perform certain waterproofing work on the house foundation. Davis later sued RX, alleging, among other things, that RX had damaged a foundation wall of the house by hitting it with a heavy piece of equipment.[1] The trial court granted summary judgment to RX, finding that Davis had spoliated video footage of the alleged incident and ruling that, without the spoliated video footage, there was no evidence RX had hit the wall.

---

[1] The owner of the house, Victoria McGreer, assigned all of her claims against RX to Davis and is not a party to this case.

Davis appeals, challenging the trial court's spoliation finding and grant of summary judgment. The trial court did not hold an evidentiary hearing on the issue of spoliation, so as to both the spoliation finding and the grant of summary judgment, the evidence must be viewed in Davis' favor. So viewed, the evidence shows that the video footage was not under Davis' control. Indeed RX introduced no evidence to support its contention that Davis controlled the footage. So the trial court erred in finding that he had spoliated it and in finding no genuine issue of material fact. So we reverse the grant of summary judgment on all claims.

1. *Facts and procedural posture*

Davis' complaint against RX asserted claims for breach of contract, negligence, trespass, punitive damages, and attorney fees. The complaint alleged that Davis had hired RX to install waterproofing membrane to a house foundation, install a French drain, add gravel backfill, and compact the soil and fill around the foundation walls; that RX failed to complete the work in a timely manner and in compliance with industry standards; that Davis told RX not to perform any further work on the property and prohibited a particular RX employee from entering the property because of purported drug use; that the prohibited employee subsequently performed

unauthorized work on the property, improperly backfilling and compacting soil outside the front foundation wall of the house; that the banned employee repeatedly drove heavy construction equipment over the improperly compacted soil and struck the front foundation wall with that equipment; and that RX's improper work on the property damaged the front foundation wall.

RX filed a motion for summary judgment, arguing that Davis had spoliated the video of the incident, that there was no admissible evidence its employee had struck the foundation wall with heavy equipment, and that the admissible evidence, including testimony from RX's expert and an expert originally hired by Davis, showed that the wall had not been struck. Davis responded to the motion, citing evidence showing that the wall had been hit by a heavy piece of equipment known as a skid steer. That evidence included his own affidavit and deposition testimony that he had observed footage from the video surveillance system showing the banned RX employee hitting the foundation wall with the skid steer. Davis further testified that he had attempted to obtain the video footage from Wyze, the video surveillance monitoring company, but had been informed that it was unavailable and testified that his attorneys were still tying to secure it due to a company policy.

After holding oral argument on RX's motion for summary judgment, the trial court entered an order granting the motion as to all claims. In that order, the court found that Davis had spoliated the video evidence and, as a sanction, the court excluded Davis' testimony regarding the video. Absent such testimony, the court ruled that the uncontroverted evidence showed that there was no collision with the foundation wall. This appeal followed.

2. *Spoliation*

Davis asserts that the trial court abused its discretion in ruling that he had spoliated the video footage and in excluding his testimony about the video for purposes of summary judgment. We agree.

> The term "spoliation" is used to refer to the destruction or failure to preserve evidence that is relevant to contemplated or pending litigation. Such conduct may give rise to the rebuttable presumption that the evidence would have been harmful to the spoliator. However, in order for the injured party to pursue a remedy for spoliation, the spoliating party must have been under a duty to preserve the evidence at issue.

*Phillips v. Harmon*, 297 Ga. 386, 393-394 (II) (774 SE2d 596) (2015) (citations and punctuation omitted). Thus, "[i]t is axiomatic that in order for there to be spoliation, the evidence in question must have existed and been in the control of a party." *Sentry*

*Select Ins. Co. v. Treadwell*, 318 Ga. App. 844, 847 (2) (c) (734 SE2d 818) (2012). See also *Jones v. Krystal Co.*, 231 Ga. App. 102, 107 (f) (498 SE2d 565) (1998) (spoliation of evidence occurs "only when the party has evidence within its control").

As noted above, RX raised the spoliation issue in its motion for summary judgment, and the trial court resolved the issue as part of its summary judgment ruling without holding an evidentiary hearing as to spoliation. Under these circumstances, the summary judgment standard controls our review of the issue. *Cooper Tire & Rubber Co. v. Koch*, 303 Ga. 336, 344 (3) (812 SE2d 256) (2018).

> In resolving the motion, [including the spoliation issue,] the trial court . . . considered . . . witness affidavits and depositions, but did not hold an evidentiary hearing at which the court could decide the credibility of those witnesses. Thus, . . . the motion is properly reviewed under the standard applicable to a motion for summary judgment, and as the party opposing the motion, [Davis] is entitled to have the evidence in the record viewed in the light most favorable to (him) and to have all reasonable inferences from the evidence drawn in (his) favor.

Id. (citations and punctuation omitted). See also *Anthem Companies v. Wills*, 305 Ga. 313, 316 (2) (823 SE2d 781) (2019) (applying summary judgment standard of review where the trial court decided a motion for spoliation without holding an evidentiary hearing).

So viewed, the evidence shows that the video footage was not in the control of Davis, but was in control of home monitoring company Wyze. As recited above, Davis testified that he attempted to obtain the video from Wyze, but was unable to do so because of a Wyze policy. While the evidence shows that Davis was able to observe the surveillance video footage, RX has cited no evidence that Davis had the authority to exercise control over the footage or the ability to preserve it.

"A trial court has wide discretion in adjudicating spoliation issues, and we will not disturb the trial court's judgment absent an abuse of discretion." *Anthem Companies*, supra at 315 (2). "[A] trial court abuses its discretion when its ruling is unsupported by any evidence of record or when that ruling misstates or misapplies the relevant law." *Beyond Meat, Inc. v. Don Lee Farms*, 358 Ga. App. 77, 80 (2) (853 S.E.2d 667) (2021) (citation and punctuation omitted). Here, the trial court failed to view the evidence on spoliation in the light most favorable to Davis as the nonmovant and thus abused its discretion in finding that Davis had spoliated the video footage for purposes of summary judgment. However, "we note that spoliation can be an issue that develops as a case progresses. If additional evidence emerges regarding [the video footage], or if the court has the opportunity at trial or otherwise to evaluate the

credibility of the pertinent witnesses, [RX] might renew its spoliation motion." *Cooper Tire & Rubber Co.*, supra at 347 (3).

3. *Summary judgment*

Davis asserts that the trial court erred in granting RX's motion for summary judgment on all claims. We agree.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

*The West Firm v. Cent. United Methodist Church of Atlanta*, 373 Ga. App. 148, 150-151 (2) (907 SE2d 233) (2024) (punctuation omitted), quoting *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). "Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met." *Head v. de Souse*, 353 Ga. App.

309 (836 SE2d 227) (2019) (citation and punctuation omitted). "In making that determination, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Nash v. Reed*, 349 Ga. App. 381, 382 (825 SE2d 853) (2019) (citation and punctuation omitted).

(a) *Breach of contract and negligence claims*

In moving for summary judgment on the breach of contract and negligence claims, RX pointed to evidence supporting its contention that the foundation wall had not been hit by heavy equipment. In response, Davis did not simply rest on his pleadings, but instead pointed to specific evidence giving rise to a triable issue, including his own testimony, text messages between him and the owner of RX, and his father's deposition.

As discussed above, Davis swore in both his affidavit and deposition testimony that he had seen the surveillance video showing the banned RX employee strike the wall with the skid steer. Davis further deposed that two-and-a-half hours after the incident, he went to the site, saw skid steer tracks against the foundation wall, and saw areas where the wall had been hit as depicted in a photograph. Davis stated in his affidavit that he and the owner of RX went to the site the next day, that he pointed out

8

marks on the foundation wall where it had been hit, and that the RX owner acknowledged that his employee had struck the wall with the skid steer. Davis also presented subsequent text messages between him and the RX owner in which the owner appeared to indicate that he was not disputing that the wall had been damaged by his employee.

Davis' father deposed that he lived across the street from the work site; that on the date in question he saw the employee drive the skid steer back-and-forth near the foundation of the house; that he saw the employee get off the skid steer several times to look at the wall; and that he called his son to tell him the employee might have hit the foundation wall. During his deposition, the father was shown a photograph of the wall and he testified that it showed skid steer tread marks against the foundation wall and marks on the wall where it may have been hit. He further testified that after the incident he went to the site and saw that the wall was bowed in near the area with scuff marks depicted in the photograph and where he had seen the employee get off the vehicle to look at the wall.

Viewing the evidence in the light most favorable to Davis, we find that there are genuine issues of material fact as to whether an RX employee had entered the property

and struck the foundation wall with the skid steer. "The trial court therefore erred in finding no such triable issues and in granting summary judgment [on the breach of contract and negligence] claim[s]." *The West Firm*, supra at 151 (2).

(b) *Trespass claims*

The trial court found that Davis had asserted two theories of recovery for trespass — (1) that he had told RX to stop work on the property, and (2) that the RX employee whom he had banned from the property nevertheless entered the property. In granting summary judgment to RX on these claims, the court incorrectly reasoned that there was no evidence creating a genuine issue of material fact as to either trespass theory.

With regard to the first theory, the trial court acknowledged Davis' deposition testimony that had demanded that RX stop work on the property. But the court then cited evidence of text messages purportedly showing a conflict with such testimony and concluded that there was no credible evidence supporting the claim that Davis had demanded that RX stop working on the project. In doing so, the trial court failed to construe the evidence and all reasonable inferences in favor of Davis, as the

nonmovant, and instead improperly construed the purported conflict in the evidence in favor of movant RX. See *In the Matter of Tapley*, supra; *Nash*, supra.

Moreover, we note that the *Prophecy* rule,[2] under which a party's self-contradictory testimony is construed against him on summary judgment, does not apply to the trial court's ruling which did not cite self-contradictory testimony by Davis; instead, the court cited only purported contradictions created by text messages and made no finding that such messages had been adopted by Davis in his testimony. See *CSX Transportation v. Belcher*, 276 Ga. 522, 523-524 (1) (579 SE2d 737) (2003) (the *Prophecy* rule applies only to self-contradictions in a party's sworn testimony and does not apply to unsworn statements that have not been incorporated into the party's sworn testimony). Indeed, Davis' affidavit, like the deposition testimony cited by the trial court, consistently stated that he had informed RX not to return to the property. Under these circumstances, the trial court erred in finding that there was no evidence creating a genuine issue of material fact about whether Davis had instructed RX to stop working on the property.

---

[2] *Prophecy Corporation v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986).

As for Davis' second trespass theory that the banned employee had entered the property, the trial court ruled that without Davis' excluded testimony regarding what he had seen on the spoliated video, there was no evidence that the banned employee had been on the site. But as discussed above in Division 2, the trial court erred in finding that Davis had spoliated the video and in excluding his testimony about it. The trial court therefore erred in granting summary judgment on this basis.

(c) *Punitive damages and attorney fees*

The trial court held that the derivative claims for punitive damages and attorney fees automatically failed as a matter of law because Davis could not recover under his substantive claims for breach of contract, negligence, and trespass. See *Doe v. Roe*, 362 Ga. App. 23, 28 (3) (c) (864 SE2d 206) (2021) ("derivative claims of attorney fees and punitive damages will not lie in the absence of a finding of compensatory damages on an underlying claim") (citation and punctuation omitted). But given our holdings above that the court erred in granting summary judgment on those substantive claims, it follows that the court also erred in ruling that the derivative claims failed as a matter of law.

4. *Expert affidavit and report*

A week after the summary judgment hearing, Davis filed an affidavit and report from an engineer opining about the causes of damage to the foundation wall. RX moved to exclude the affidavit and report, arguing that they were untimely and that they put forth a new claim regarding damage to the wall that was not included in the complaint or pretrial order. The trial court granted the motion to exclude the affidavit and report for purposes of summary judgment, but reserved ruling as to the admissibility of such expert testimony at trial.

Davis now enumerates that the court erred in excluding the expert's report for purposes of summary judgment. But given our decision above reversing the grant of summary judgment, and since the trial court expressly reserved ruling on the admissibility of such evidence at trial, we need not address this enumeration. We express no opinion as to the admissibility of the expert's report or testimony in future proceedings in this case.

*Judgment reversed. Mercier, C. J., and Rickman, P. J., concur.*